Approved: _____
MATTHEW J.C. HELLMAN / KEVIN SULLIVAN
Assistant United States Attorneys

Before:   THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York

**23 MAG 6023**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ARTHUR PETROV,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 50 U.S.C. § 4819; and 18 U.S.C. §§ 2, 371, 554, 1349, and 1956<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

BRIAN SMITH, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Defraud the United States)

1. From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to defraud the United States and agencies thereof, by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful functions of the U.S. Department of Commerce, an agency of the United States, in the enforcement and issuance of licenses relating to the export of goods.

2. In furtherance of the conspiracy and to effect the illegal object thereof, ARTHUR PETROV, the defendant, and others known and unknown, committed the overt acts set forth in paragraphs 19(p) through 19(oo) of this Complaint, among others.

(Title 18, United States Code, Sections 371 and 3238.)

## COUNT TWO
### (Conspiracy to Violate ECRA)

3. From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense

begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to violate, and to cause a violation of, licenses, orders, regulations, and prohibitions issued under the Export Control Reform Act.

4.     It was a part and an object of the conspiracy that ARTHUR PETROV, the defendant, and others known and unknown, would and did export and cause to be exported from the United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, electronics components on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, without having first obtained a license for such export from the U.S. Department of Commerce, in violation of Title 50, United States Code, Section 4819(a)(2)(A), (B), (C), (D), (E), (F), and (G), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Section 3238.)

### COUNT THREE
**(Violation of ECRA – Export #1)**

5.     From at least in or about April 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully exported and caused to be exported, and attempted to export and cause to be exported, from the United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.a.2, without having first obtained a license for such export from the U.S. Department of Commerce, and aided and abetted the same.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Sections 2 and 3238.)

### COUNT FOUR
**(Violation of ECRA – Export #2)**

6.     From at least in or about July 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully exported and caused to be exported, and attempted to export and cause to be exported, from the

United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, integrated circuits on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.b.1.a, without having first obtained a license for such export from the U.S. Department of Commerce, and aided and abetted the same.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Sections 2 and 3238.)

## COUNT FIVE
### (Violation of ECRA – Export #3)

7.      From at least in or about April 2022, up to and including in or about March 2023, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully exported and caused to be exported, and attempted to export and cause to be exported, from the United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.a.2, without having first obtained a license for such export from the U.S. Department of Commerce, and aided and abetted the same.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Sections 2 and 3238.)

## COUNT SIX
### (Conspiracy to Smuggle Goods from the United States)

8.      From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, smuggling goods from the United States in violation of Title 18, United States Code, Section 554.

9.      It was a part and an object of the conspiracy that ARTHUR PETROV, the defendant, and others known and unknown, would and did fraudulently and knowingly export and send from the United States, attempt to export and send from the United States, and cause to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, electronics components on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, contrary to laws and regulations of the United States, to wit, the Export

Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

10. In furtherance of the conspiracy and to effect the illegal objects thereof, ARTHUR PETROV, the defendant, and others known and unknown, committed the overt acts set forth in paragraphs 19(p) through 19(oo) of this Complaint, among others.

(Title 18, United States Code, Sections 371 and 3238.)

## COUNT SEVEN
**(Smuggling Goods from the United States – Export #1)**

11. From at least in or about April 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, fraudulently and knowingly exported and sent from the United States, attempted to export and send from the United States, and caused to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.a.2, contrary to laws and regulations of the United States, to wit, the Export Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

(Title 18, United States Code, Sections 554(a), 2, and 3238.)

## COUNT EIGHT
**(Smuggling Goods from the United States – Export #2)**

12. From at least in or about July 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, fraudulently and knowingly exported and sent from the United States, attempted to export and send from the United States, and caused to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, integrated circuits on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774,

Supplement Number 1, controlled under Export Control Classification Number 3A991.b.1.a, contrary to laws and regulations of the United States, to wit, the Export Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

(Title 18, United States Code, Sections 554(a), 2, and 3238.)

## COUNT NINE
### (Smuggling Goods from the United States – Export #3)

13.     From at least in or about April 2022, up to and including in or about March 2023, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, fraudulently and knowingly exported and sent from the United States, attempted to export and send from the United States, and caused to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.a.2, contrary to laws and regulations of the United States, to wit, the Export Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

(Title 18, United States Code, Sections 554(a), 2, and 3238.)

## COUNT TEN
### (Conspiracy to Commit Wire Fraud)

14.     From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343.

15.     It was a part and an object of the conspiracy that ARTHUR PETROV, the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent

5

pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3238.)

## COUNT ELEVEN
### (Conspiracy to Commit Money Laundering)

16. From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other commit money laundering in violation of Title 18, United States Code, Section 1956(a)(2)(A).

17. It was a part and an object of the conspiracy that ARTHUR PETROV, the defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds to places in the United States from and through places outside the United States, in amounts exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity, to wit, (a) smuggling goods from the United States, as charged in Counts Seven through Nine of this Complaint, and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1956(h), 1956(f), and 3238.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

18. I have been an FBI Special Agent since 2018. I am currently assigned to the Counterintelligence Division of the New York Field Office of the FBI, which focuses on cases involving, among other things, sanctions evasion, export control violations, counter-proliferation, wire fraud, bank fraud, and money laundering. During my time as an FBI Special Agent, I have become familiar with some of the ways in which criminal actors avoid export controls, evade sanctions, and smuggle goods and technology from the United States, and I have participated in numerous investigations involving sanctions evasion, export control violations, and smuggling. This affidavit is based upon my participation in the investigation of this matter, including my conversations with law enforcement agents and other individuals, my review of law enforcement reports and records, and my review of business records, photographs, email communications, and draft summaries and translations of such documents and communications. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

19. Based on my participation in this investigation, including my conversations with other law enforcement agents and other individuals, my conversations with law enforcement agents and other individuals, my review of law enforcement reports and records, and my review of business records, shipping and travel records, photographs, email communications obtained pursuant to judicially authorized search warrants, and draft summaries and translations of such documents and communications, I have learned the following, in substance and in part:

### Overview

a. As set forth in greater detail below, the FBI and the Bureau of Industry and Security ("BIS") of the U.S. Department of Commerce ("DOC") are investigating a sophisticated international scheme to violate and evade U.S. export controls against Russia that began before and continued after Russia's February 2022 invasion of Ukraine. PETROV and two co-conspirators ("CC-1" and "CC-2"), who are Russian nationals operating an illicit procurement network in Russia and elsewhere overseas, have fraudulently procured from U.S. distributors large quantities of micro-electronics subject to U.S. export controls on behalf of LLC Electrocom VPK ("Electrocom"), a Russia-based supplier of critical electronics components for manufacturers supplying weaponry and other equipment to the Russian military. To carry out the scheme, PETROV, CC-1, and CC-2 use shell companies and other deceptive means to conceal that the electronics components are destined for Russia. The technology that PETROV and his co-conspirators have procured in contravention of export controls during the course of the conspiracy have significant military applications, and include various types of electronics components that have been recovered in Russian military hardware on the battlefield in Ukraine, such as Russian guided missiles, drones, and electronic warfare and communications devices.

b. To perpetrate the scheme, PETROV first acquires the controlled micro-electronics from U.S.-based electronics exporters using a Cyprus-based shell company, Astrafteros Technokosmos LTD ("Astrafteros"). PETROV procures these sensitive electronics components by falsely representing to the U.S. exporters that Astrafteros is purchasing the items for fire security systems, among other commercial uses, and that the ultimate end-users and destinations of the electronics are companies in Cyprus or one of two other countries ("Country-1" and "Country-2") — when in fact the components are destined for Electrocom in Russia, which supplies manufacturers for the Russian military. The micro-electronics that PETROV has procured as part of the conspiracy include, among other things, microcontrollers and integrated circuits that are on the Commerce Control List ("CCL") maintained by the DOC and cannot lawfully be exported or reexported to Russia without a license from the DOC. Invoices provided to PETROV by the U.S. distributors expressly noted that these microcontrollers and integrated circuits are subject to U.S. export controls. As noted, these types of micro-electronics have been recovered in Russian military equipment on the battlefield in Ukraine.

c. To evade these controls, PETROV, CC-1, and CC-2 work together to transship the controlled items using pass-through entities in third countries. In particular, after fraudulently procuring the electronics components from the U.S. distributors, PETROV ships the controlled items to a pass-through shipping company ("Company-1") in Country-1 used by CC-1, or to a pass-through shipping company ("Company-2") in Country-2 operated by CC-2. CC-1 and CC-2 then cause the items to be shipped, sometimes through yet another third country, to the ultimate destination: Electrocom in Saint Petersburg, Russia. At all times, PETROV, CC-1, and CC-2 conceal from the U.S. distributors that they are procuring the controlled electronics

components on behalf of Electrocom — a supplier for the Russian military industrial complex, as set forth above — and that the items are destined not for Cyprus, Country-1, or Country-2, but rather for Russia.

        d.     During the course of the conspiracy, PETROV, CC-1, and CC-2 have procured from U.S. distributors and shipped to Russia more than $225,000 worth of controlled electronics components with military applications. None of these individuals, or the entities they use to perpetrate their scheme, have ever applied for an export license from the DOC.

### The Defendant, CC-1, CC-2, and Relevant Entities

        e.     Electrocom is a Russia-based supplier of electronics to the Russian military, founded by CC-2 and two other Russian nationals. CC-2 is an executive at Electrocom, and PETROV and CC-1 are employees at Electrocom. On behalf of Electrocom, PETROV, CC-1, and CC-2 operate and use pass-through entities — Astrafteros (in Cyprus), Company-1 (in Country-1), and Company-2 (in Country-2), respectively — to procure electronics from U.S.-based companies by misrepresenting the true destination and end-use of the electronics, and then cause those goods and technology to be shipped to Electrocom in Russia, in violation of U.S. export controls. The company's official name — LLC Electrocom VPK — reflects its principal purpose as a supplier of components used by the Russian military: "VPK" is commonly used as an acronym in Russian for "Military Industrial Complex." Consistent with its corporate name, Electrocom supplies dual-use electronics — that is, electronics with both civilian and military applications — to Russian military suppliers, including multiple companies that have been sanctioned by the U.S. Government. For example, in a draft letter dated March 10, 2023, which CC-1 received from an associate, and was addressed from Electrocom to TRV-Engineering — a U.S.-sanctioned Russian company affiliated with Tactical Missiles Corporation JSC, a U.S.-sanctioned Russian defense conglomerate that produces airborne weapons and weapon systems for Russia's navy[1] — CC-2, the signatory to the letter identified as Electrocom's "General Director," described Electrocom as "specializ[ing]" in "the supply" and import to Russia of "hard-to-reach" and "high-tech electric components produced in the United States, Europe and Asia for domestic enterprises of both the civil sector and the military industrial complex."

---

[1] On or about March 24, 2022, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Tactical Missiles Corporation JSC as a Specially Designated National ("SDN") for "operating or having operated in the defense and related materiel sector of the Russian Federation economy and for being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, the Government of the Russian Federation," and OFAC designated TRV-Engineering (also known as TRV Auto Limited Liability Company) as an SDN for "being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, [Tactical Missiles Corporation JSC]." On or about April 1, 2022, the DOC added "Tactical Missile Corporation, TRV Engineering" to the DOC's Entity List — which identifies entities for which there is reasonable cause to believe the entities have been involved, are involved, or pose a significant risk of being or becoming involved in activities contrary to the national security or foreign policy interests of the United States — "for acquiring and attempting to acquire items subject to the [DOC's Export Administration Regulations] in support of Russia's military."

f. PETROV, a Russian national who has resided in Cyprus and Russia, among other locations, has operated Astrafteros, a shell company registered in Cyprus, to procure from U.S. distributors micro-electronics for transshipment to Russia. PETROV works for Electrocom and has used Astrafteros as a front company, working together with CC-1 and CC-2, to procure from U.S. distributors hundreds of thousands of dollars' worth of controlled goods that they then transshipped to Electrocom in Russia. Based on a review of email communications, PETROV represents that he is "Head of Purchasings" for Astrafteros. PETROV's public online profile state that he stopped working for Electrocom in February 2022 — and describe his role there as "Purchaser" and "Head [o]f Purchasing Department" in Russia" — yet his email signature blocks and the content of his email correspondence make clear that he is still working for Electrocom but doing so under the Astrafteros name. For example, even after he began operating as the "Head of Purchasings" for Astrafteros, PETROV sometimes even used an email address expressly associating him with Electrocom.

g. CC-1 is a Russian national residing in Russia who works for Electrocom and transships U.S.-sourced electronics to Electrocom in Russia through Company-1, a third-party distributor based in Country-1. CC-1 uses Company-1 as a pass-through for U.S.-sourced parts procured for Electrocom by PETROV through Astrafteros in Cyprus. The website for Company-1 states that the company supplies "electronic components" and provides "supply and service in Russia."

h. CC-2 is a Russian national residing in Russia who is the co-founder and General Director of Electrocom. As part of the illicit procurement network with PETROV and CC-1, CC-2 operates Company-2, a shell company registered and based in Country-2, to transship U.S.-sourced electronics procured by PETROV and Astrafteros in Cyprus, to Electrocom in Russia.

**Background on Russia's Use of U.S.-Sourced Electronics in Ukraine**

i. Russia is highly dependent on Western-sourced micro-electronics components for its military's hardware, including components manufactured or sold in the United States. Russia relies on third-party transshipment hubs and clandestine procurement networks, such as the network operated by PETROV to secure access to such U.S.-sourced electronics.

j. Russia's weapons systems and military platforms — including rocket systems, drones, ballistic missiles, tactical radios, and electronic warfare devices — contain a range of predominantly Western-sourced components and micro-electronics that are critical to their functions. Russia's war effort in Ukraine is particularly dependent on components sourced from the United States. An array of U.S.-sourced components have been found in Russian military hardware recovered in Ukraine since Russia's February 2022 invasion. As set forth below, many of these components are subject to export controls in the United States. Categories of electronics components found in Russian military hardware in Ukraine include, among other things, the types of microcontrollers and integrated circuits that PETROV, CC-1, and CC-2 have fraudulently procured from U.S. distributors and illicitly shipped to Electrocom in Russia.

**Background on Applicable Export Regulations**

k.  On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which included the Export Control Reform Act ("ECRA"). *See* 50 U.S.C. § 4801 *et seq*. ECRA provides permanent statutory authority for the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Sections 730-774.

l.  ECRA provides that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To that end, ECRA grants the President the authority to "(1) control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. § 4813.

m.  ECRA authorizes the DOC to review and control the export from the United States of certain items, including goods, software, and technologies. The EAR outline the regulatory framework as provided by ECRA. In particular, the EAR restrict the export of items that could contribute to the military potential of other nations or that could be detrimental to U.S. foreign policy or national security. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another.

n.  Through the EAR, the BIS reviews and controls the export from the United States to foreign countries of certain items. In particular, the BIS has placed restrictions on the export and reexport of items that the BIS has determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depend on several factors, including the technical characteristics of the item, the destination country, the end-user, and the end-use.

o.  The most sensitive items subject to EAR controls are identified on the Commerce Control List, or CCL, set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL are categorized by Export Control Classification Number ("ECCN"), each of which have export control requirements depending on destination, end-use, and end-user. As of April 8, 2022, license requirements for export to Russia were expanded to cover all items on the CCL. *See* 87 Fed. Reg. 12226 (Mar. 3, 2022); 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. § 746.8.

p.  As detailed below, PETROV, CC-1, and CC-2 have procured items controlled on the CCL, for which an export license from the DOC is required for the export, or reexport, to Russia of these goods. None of PETROV, CC-1, or CC-2 — nor their affiliated entities — have applied for, or received, a license from the DOC to ship controlled items to Russia.

q.  Under ECRA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to the statute, including the EAR. *See* 50 U.S.C. § 4819(a)(1).

**The Scheme**

r.	As described above, PETROV, CC-1, and CC-2 have perpetrated a scheme to evade and violate U.S. export controls by procuring and shipping controlled electronics with military applications to Russia. PETROV negotiated the purchase and export of the electronics with U.S.-based suppliers. To procure the technology, PETROV misrepresented that the goods would be shipped to Cyprus, Country-1, or Country-2 — which were in fact the locations of pass-through shipping companies operated and used by PETROV and his co-conspirators to transship the components to Electrocom in Russia. In particular, CC-1 used Company-1 in Country-1, and CC-2 used Company-2 in Country-2, to ship to Russia the sensitive U.S.-sourced components initially procured by PETROV. As an essential part of the scheme, PETROV, CC-1, and CC-2 concealed at all times from the U.S. exporters that the goods were destined for Russia.

s.	Set forth below are three examples of exports of controlled technology that PETROV and his co-conspirators executed as part of this illicit scheme ("Export #1," "Export #2," and "Export #3").

**Export #1**

t.	In or about April 2022, approximately six weeks after Russia's invasion of Ukraine, PETROV began communicating with a U.S.-based electronics distributor ("U.S. Distributor-1"), to purchase an array of micro-electronics, including electronics subject to DOC export controls, as set forth below.

u.	In his initial correspondence with U.S. Distributor-1 in or about April 2022, PETROV misrepresented that Astrafteros in Cyprus was the end-user of the items, falsely claiming that Astrafteros is a "fabless manufacturer (fire security systems sphere)," when in fact PETROV operates Astrafteros as a pass-through freight-forwarder, on behalf of Electrocom and in coordination with CC-1 and CC-2.[2]

v.	The electronics that PETROV procured as part of the conspiracy from U.S. Distributor-1 in Export #1 included microcontrollers that are controlled on the CCL for Anti-Terrorism reasons under ECCN 3A991.a.2, such that a license from the DOC was required for the export or reexport to Russia of this item at all times relevant to this Complaint.

w.	On or about July 14, 2022, following the above-referenced misrepresentations by PETROV about the nature of Astrafteros and the destination of the electronics he was seeking to purchase, U.S. Distributor-1 sold PETROV and Astrafteros approximately 15 16-bit flash microcontrollers, controlled under ECCN 3A991.a.2, and shipped the microcontrollers on or about July 16, 2022 from the United States to PETROV at an address in Cyprus, where PETROV operates the shell company Astrafteros. On the invoice for the order provided to PETROV, U.S. Distributor-1 expressly noted that the 15 microcontrollers are

---

[2] PETROV, CC-1, and CC-2 communicated primarily in Russian. Descriptions of those communications in this Complaint reflect draft English translations. Throughout this Complaint, all communications are described in substance and in part, and quoted text appears as in the original messages, including any typographical and grammatical errors, except where alterations are indicated.

controlled under ECCN 3A991.a.2 and stated that the export of the microcontrollers is controlled by the U.S. Government, authorized "only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified," and that the items are prohibited from being "resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s)."

    x. On or about July 20, 2022, PETROV received the 15 controlled microcontrollers in Cyprus. On or about July 27, 2022, CC-1 emailed PETROV requesting a status update on the microcontrollers. On or about July 28, 2022, PETROV informed CC-1 via email that he would send CC-1 the microcontrollers imminently, along with other micro-electronics procured from U.S. Distributor-1.

    y. On or about July 29, 2022, CC-1 sent a contract, which included the 15 controlled microcontrollers, to an employee of a Russia-based logistics company ("Logistics Company-1") who was responsible for coordinating the transportation of the goods to Russia. PETROV and his co-conspirators use Logistics Company-1 to transship sensitive, controlled electronics components — after PETROV has procured the goods from U.S. distributors and the goods have been shipped to PETROV and Astrafteros in Cyprus — to Electrocom in Russia. The contract explicitly stated that the buyer of the goods is Electrocom, and the resulting invoice from Logistics Company-1 stated that the goods will be shipped to Saint Petersburg, Russia.

    z. On or about September 20, 2022, CC-1 emailed a contract to an employee of a Russian Radio Frequency Identification ("RFID") company ("RFID Company-1") reflecting the sale by Electrocom to RFID Company-1 of approximately 185 microcontrollers of the same make and model as the 15 microcontrollers that U.S. Distributor-1 exported to PETROV and Astrafteros. The contract indicated that Electrocom was shipping the microcontrollers to RFID Company-1's Moscow address. Russia is reliant on Western imports for its RFID chips, which have significant military applications, including for use in tagging military assets for tracking purposes.

    aa. A review of DOC records determined that a DOC license was not applied for, or obtained, in connection with the export of the 15 controlled microcontrollers in Export #1.

### Export #2

    bb. In or about July 2022, PETROV began purchasing DOC-controlled electronics from another U.S.-based distributor ("U.S. Distributor-2"). On or about July 27, 2022, in order to procure the sensitive controlled goods, PETROV misrepresented the nature of Astrafteros's business to a U.S. Distributor-2 employee in an email, stating that the function of Astrafteros is "design and production" — when in fact, as described above, PETROV operates Astrafteros as a pass-through freight-forwarder, on behalf of Electrocom and in coordination with CC-1 and CC-2, to obtain electronics for Electrocom.

    cc. Export #2 included integrated circuits that are controlled on the CCL under ECCN 3A991.b.1.a for Anti-Terrorism reasons, such that a license from the DOC was required for the export or reexport to Russia of this item at all times relevant to this Complaint.

    dd. On or about August 18, 2022, U.S. Distributor-2 shipped an array of dual-use electronics to Astrafteros's address in Cyprus. In the shipping, billing, and end-use records

and correspondence, PETROV falsely represented to U.S. Distributor-2 that the "ultimate consignee" of the controlled items was Company-1 — that is, the third-party distributor used by CC-1 to perpetrate the scheme on behalf of Electrocom. The invoice that U.S. Distributor-2 provided to PETROV for Export #2 noted the ECCN numbers under which the goods are controlled and explicitly stated that "re-export[ation]" or further "ship[ment] to another destination" was prohibited under U.S. export controls.

  ee. On or about August 22, 2022, PETROV emailed CC-1 informing CC-1 that Export #2 would be sent the following day. PETROV also emailed CC-1 a shipping label and an invoice for Export #2, reflecting the controlled micro-electronics that had been shipped by U.S. Distributor-2 to Astrafteros in Cyprus.

  ff. On or about August 31, 2022, CC-1 emailed an employee of Logistics Company-1, providing Logistics Company-1 with the weights for each of the items ordered, including the export-controlled integrated circuits. On or about September 2, 2022, CC-1 sent a contract for the order to Logistics Company-1. The contract set forth that the buyer of the goods was Electrocom, and the resulting invoice from Logistics Company-1 stated that the goods would be shipped to Saint Petersburg, Russia.

  gg. A review of DOC records determined that a DOC license was not applied for, or obtained, in connection with the export of the integrated circuits in Export #2.

### Export #3

  hh. On or about July 15, 2022, PETROV ordered from U.S. Distributor-1, via email, 90 microcontrollers — specifically, 16-bit flash digital signal processors and controllers — based on his same April 2022 misrepresentations to U.S. Distributor-1 that Astrafteros was the end-user of the goods purchased from U.S. Distributor-1 and that Cyprus was the final destination.

  ii. The microcontrollers procured in Export #3 were controlled on the CCL under ECCN 3A991.a.2 for Anti-Terrorism reasons, such that a license from the DOC was required for the export or reexport to Russia of this item at all times relevant to this Complaint.

  jj. On or about January 11, 2023, relying on the above-referenced misrepresentations by PETROV to U.S. Distributor-1 about the nature of Astrafteros and the final destination of the goods, U.S. Distributor-1 shipped the 90 controlled microcontrollers from the United States to PETROV at Astrafteros's address in Cyprus. On the invoice for the order provided to PETROV, U.S. Distributor-1 expressly noted that the microcontrollers are controlled under ECCN 3A991.a.2 and that the export of the microcontrollers is controlled by the U.S. Government, authorized "only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified," and that the items are prohibited from being "resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s)."

  kk. On or about January 31, 2023, PETROV shipped the 90 controlled microcontrollers to Company-2 in Country-2, and updated his superior at Electrocom, CC-2, about the status of the shipment. CC-1 participated in ensuring that the shipment reached Russia; among other things, CC-1 emailed CC-2 a contract between Electrocom and Company-2 for the

microcontrollers. The consignee on the contract, which was not provided to U.S. Distributor-1, is listed as Electrocom alongside its address in Saint Petersburg, Russia.

   ll. Over the following weeks, CC-1 apprised CC-1's Electrocom colleagues, including CC-2, of the shipment of the 90 microcontrollers. For example, on or about February 8, 2023, CC-1 emailed CC-2 the shipping label for the shipment that included the microcontrollers. CC-1 was also tracking other Russia-bound shipments around this time. On or about February 27, 2023, CC-1 emailed an employee of Aviasystems, a Russian aerospace company and military supplier that focuses on aircraft navigational support, flight controls, and landing equipment, to advise that a shipment of goods had arrived at Russian customs, and a second shipment was on the border. CC-1 wrote, "Due to the fact that they are dual-use, we try to make certificates for them," an apparent reference to the military applications for the goods and CC-1's efforts around this time to facilitate shipment of such goods to Electrocom in Russia.

   mm. On or about March 1, 2023, CC-2 sent a Company-2 employee two emails reflecting that Export #3 involved Cyprus, Country-2, and Russia. CC-2 attached "invoices from Cyprus to [City-1], as well as from [City-1] to Russia," referring to the city in Country-2 where Company-2 is based. CC-2 attached the Astrafteros invoice that lists the 90 controlled microcontrollers, and indicated that Electrocom was buying the goods from Company-2. CC-2 added, "They have items that need to be left in a warehouse in [City-1]," and stated that "The remaining positions," which CC-2 made clear included the 90 controlled microcontrollers, "must be shipped to Russia on the provided invoice."

   nn. In or about early March 2023, the Export #3 microcontrollers arrived at Electrocom's address in Saint Petersburg, Russia.

   oo. A review of DOC records determined that a DOC license was not applied for, or obtained, in connection with the export of the microcontrollers in Export #3.

(continued on next page)

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ARTHUR PETROV, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Brian Smith
_____
BRIAN SMITH
Special Agent
Federal Bureau of Investigation


Sworn to me through the transmission of
this Complaint by reliable electronic
means, this 11th day of August 2023.

_____
THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York